The State of Ohio, plaintiff-appellee, indicted Larry Gordon, defendant-appellant, on one count of murder in connection with the shooting death of Kenneth Roscoe; two counts of attempted murder of Tory Forrest and Dwight Williams; and one count of having a weapon while under disability. The murder and attempted murder counts were tried to a jury who returned a verdict of guilty of the count of murder and guilty of the count of attempted murder of Tory Forrest. The jury found defendant not guilty of the count of attempted murder of Dwight Williams (Dwight Williams was not injured and did not appear for the trial). Defendant, through counsel, orally waived the right to a jury trial of the count of having a weapon while under disability and was found guilty by the trial court. Defendant was sentenced to fifteen years to life on the murder count and seven years for the attempted murder of Forrest; those counts to be served consecutively. Defendant was sentenced to twelve months imprisonment for the charge of having a weapon while under disability, that time to be served concurrently with the other sentences.
Defendant appeals asserting the following assignments of error:
"Assignment of Error Number One:
 "The trial court lacked jurisdiction to try and convict the Appellant of a weapons under disability charge where the record does not include a written waiver of the Appellant's right to trial by jury.
"Assignment of Error Number Two:
 "The judgment of the trial court is contrary to the weight of the evidence."
The state concedes assignment of error number one. InState v. Pless (1996), 74 Ohio St.3d 333, the court set forth the following determinative language in paragraph one of the syllabus:
 "(1) In a criminal case where the defendant elects to waive the right to trial by jury, R.C. 2945.05
mandates that the waiver must be in writing, signed by the defendant, filed in the criminal action and made part of the record thereof. Absent strict compliance with the requirements of R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury. * * *"
The first assignment of error is sustained.
In his second assignment of error, defendant contends that the judgment of the trial court is contrary to the weight of the evidence. The Ohio Supreme Court set forth the standard of review to apply to weight of evidence claims in State v.Thompkins (1997), 78 Ohio St.3d 380, 387, as follows:
 "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. * * * Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony. * * *" (Emphasis sic.)
In applying this test, it should be kept in mind that the weight of the evidence and the credibility of the witnesses are primarily for the trier of the facts. State v. DeHass (1967),10 Ohio St.2d 230.
The finding that defendant contends is against the weight of the evidence is his identity as the person who shot and killed Kenneth Roscoe and severely wounded Tory Forrest.
The murder and attempted murder occurred on July 24, 1997, at around midnight on Oak Street in Columbus, Ohio, near the Olde Town East store. The most important eyewitness testimony came from Tory Forrest who stated that he and Roscoe had entered the store to buy some beer and cigarettes and when they came out, Roscoe had approached a car to talk to a woman in the vehicle. When she ignored him, he started to return to his car when Forrest stated that he observed defendant getting out of the car in which the woman was seated, pulling his revolver out, and pointing it at Roscoe as he followed him back to Roscoe's car. Forrest said that after a short argument, defendant shot Roscoe. Forrest attempted to hide in the car but defendant discharged about four additional shots into the car, one of which struck Forrest in the back wounding him severely. Forrest said that he identified defendant from photographs presented to him by the police when he was in the hospital. He said that he did not know defendant prior to the incident in question and that he learned what his name was thereafter.
Defendant attempted to impeach the damaging identification by Forrest by obtaining a partial admission that he may have heard the name Larry Gordon or Larry prior to his pictorial identification in the hospital. However, that impeachment does not explain how Forrest could identify a man whom he had never seen before since the pictures did not contain any identifying name.
Defendant also attempted to impeach Forrest's testimony that the fatal shot was fired by defendant when the decedent and defendant were both standing in the street and the defendant was holding his revolver at about chest level. The pathologist who conducted the autopsy testified that the shot entered Roscoe's body at about chest level, about 4 foot 7 1/2 inches above the street, and went through Roscoe's body on a downward path. If both the assailant and deceased were standing erect at the time the shots were fired, due to the height difference between Roscoe and defendant, that path would not be possible. However, in exciting situations like this, everything is not observed with scientific precision. It may have been that Roscoe ducked to attempt to avoid the shot at the last moment. In any event, Forrest's positive witness identification was not sufficiently impeached in our eyes as a "thirteenth juror" to make the identification against the weight of the evidence.
There was a neighbor named Carmen Steward who also identified defendant as the assailant who fired the shots into the automobile. She also identified him from police photos. She stated that she was in her yard at a house a short distance from the location of the crime when she heard a shot. Just before, she had heard an argument apparently about a woman. After the initial shot, she said that she hustled her children and grandchildren inside and than she observed defendant firing four or five shots into the automobile. Defendant sought to impeach Steward by presenting the testimony of an investigator that from Steward's porch, a person could not see the location where the automobile was parked according to the placement of the car by other prosecution witnesses. However, the investigator did not lean out from the porch as Steward said she did to see the shooting. Defendant also claims that Steward was effectively impeached as she described some of the other circumstances differently from other witnesses such as that defendant departed in a brownish cream car rather than a blue car as described by Forrest. However, the time was midnight and the witness testified that she could see defendant because there was a street light there where he was standing. After viewing a traumatic event like this, it is understandable that not all details will be precisely or accurately described. Steward stated, however, that she was positive that the person firing the shots into the car was defendant.
The police expert testified that the bullet extracted from Forrest's body and the bullet extracted from Roscoe's body were fired from the same gun. Thus, evidence that defendant fired the shots into the automobile would also be convincing evidence that defendant fired the shot that killed Roscoe. Defendant also attempted to impeach the credibility of Steward by extrinsic testimony by a private investigator that Steward had indicated to him that she had reason not to like Larry Gordon. Even if true, and that was contrary to Steward's testimony, that would go only to the credibility of the witness.
The third witness for the prosecution gave testimony that circumstantially produced evidence of defendant's guilt. Teri Young testified that her twenty-six-year old twin sister was in the Olde Town East store at the time of the shooting. Young stated that shortly after the day of the shooting, defendant came to her house and said that he had heard that Young's sister said that he did the shooting and that he didn't want anyone to testify. Defendant attempted to impeach her by producing the testimony of defendant's brother that he saw Teri Young in the courthouse the Thursday before trial commenced and that she stated she never saw defendant and did not know him.
Careful review of the entire transcript discloses that the identity of defendant as the person who committed the murder and attempted murder was a matter for the jury to determine, and not one to be second guessed by this court. A reasonable trier of fact could find that the testimony identifying defendant as the guilty person is supported by credible evidence which sustains the burden of proof allotted to the state.
Defendant's second assignment of error is overruled.
Defendant's first assignment of error is sustained and defendant's second assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas imposing the consecutive sentences for murder and attempted murder is affirmed. The guilty finding and sentence of possessing a weapon while under disability is reversed. The trial court is ordered to delete that finding from the judgment.
Judgment affirmed in part; reversed in part withinstructions.
BOWMAN and DESHLER, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.